Hughes's Estate (No. 1).

Argued April 18, 1935. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

322

*Joseph M. Smith,* with him *Robert W. Smith* and *Michael T. McManus,* for appellants.

*George G. Patterson,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 29, 1935:

This proceeding grows out of unfortunate family differences which it would have been well to have kept out of court. If cool judgment had come into play, instead of ill feeling, it would likely not have been brought.

The real parties to this proceeding are two brothers and a sister, the children of Amelia H. Hughes, who died leaving an estate of more than $250,000. The disputes have arisen over its administration and settlement by Charles Robert Hughes, who was named by the mother in her will as her executor, and as trustee for her other son, William H. Hughes, and the daughter, Edna Hughes Carow. To each was given one-third of the securities and one-third of the residuary estate, the share of Charles Robert Hughes to him absolutely, that of the other two in trust. Mrs. Carow by deed named Ralph H. Moore as trustee for the income payable to her.

The mother lived with her son, Charles Robert. She seems to have had implicit trust in him—so much so that she had put all her securities in his name. They were so registered when she died. He had executed a declaration of trust that he held them for her, which he kept in his possession, and promptly after her death caused them to be inventoried as belonging to her estate. As inventoried they were appraised by Ralph H. Moore, one of the appellants.

This proceeding was brought by William H. Hughes and Ralph H. Moore, trustee for Edna Hughes Carow,

to surcharge Charles Robert Hughes and to have him removed as executor and trustee. The very competent auditor, to whom the matter was referred, and the court below declined to do either. The petitioners have appealed.

The criticisms of the appellee' are, it seems to us, somewhat carping when the real situation is taken into account. It is charged that he converted to his own use securities belonging to the estate, pledging them as collateral with a stock brokerage firm for his own speculative account. This charge entirely overlooks the fact that one-third of the securities were given to him absolutely. · It is said that he paid himself commissions on the estate before fully performing his duties as executor. The will, however, fixed his commissions at four per cent on the entire principal of the ·estate. He has devoted much time to its management. It is stated that he kept no books of account; yet he kept memoranda from which a complete account was stated. It is alleged that he did not pay over as much income as he should have disbursed, but the testatrix had been dead only fifteen months when he was called to account. A similar allegation is made as to his failure to pay over principal. Other charges are made against him; we think it not important to review them. They are of little moment, and to discuss them all would unduly enlarge this opinion for no useful purpose.

The situation is somewhat extraordinary, because the estate has suffered no loss and the unbiased auditor has found that the appellee has administered it honestly and competently.

The court below in its opinion states, what is manifest to us from a reading of the record, that the proceeding was instituted primarily for the purpose of having the appellee removed as executor and trustee. The court based its conclusion that he ought not to be removed upon what we said in Hurley's Est., 313 Pa. 53, 55, which is most pertinent in view of the nature of the situation

which this proceeding presents: "All matters complained of are trivial in nature and insufficient to warrant the action prayed for. The testimony discloses nothing more substantial than personal antagonism between the beneficiaries and the executors. 'It is the duty of the court to refuse to remove a trustee at the mere whim or caprice of the beneficiary. There should be a substantial reason appearing to the court before it removes the trustees, who enjoyed the confidence of the person who created the trust and who, by reason of his fitness for executing it, was empowered to act as trustee': Neafie's Est., 199 Pa. 307, 312. . . . In Kaier's Est., 264 Pa. 296, quoting SHARSWOOD, J., in Parson's Est., 82 Pa. 465, we said: 'It is a much more stringent and summary process to remove an executor, and it must clearly appear from the evidence that a case was made out under it, and that the discretion of the court was properly exercised. It must clearly appear that the executor is wasting or mismanaging the property or estate under his charge, or that for any reason the interests of the estate or property are likely to be jeopardized by the continuance of such an executor.' "

Commenting upon what would seem to be the principal circumstance on which appellants rely to oust appellee—the fact that he pledged securities belonging to the estate with stockbrokers as collateral for his personal account, and that he had transferred funds of the estate to himself on account of his commissions—the court pointed out that he was entitled to commissions and to one-third of the estate, but that, acting on the advice of counsel, he restored to the estate all of the funds which he had rightfully taken for commissions and the securities to which he was entitled, so that when the account was filed, all of the assets were intact and fully accounted for. Under these circumstances, we do not deem appellee's conduct sufficient ground for his removal.

The petition filed by appellants alleged, somewhat loosely as it appears from what developed, that the appellee was wasting and mismanaging the estate, embezzling its funds and converting to his own use its securities. None of these allegations was substantiated. Such grave crimes ought not to be charged against a fiduciary, even by a brother and sister, unless before giving currency to the imputations they are certain of their ground.

The executor was entitled to his commissions. He did not have to await the final settlement of the estate before taking them: Sweatman's Est., 223 Pa. 552; Middleton's Est., 66 Pa. Superior Ct. 55.

We deem it unnecessary to go into the details of the family settlement in the estate of C. A. Hughes, husband of the testatrix. The suspicions as to appellee's conduct in connection with it can have no weight in our determination of the real questions involved in these appeals.

One detail set forth in the statement of questions involved remains to be disposed of. It is said that the appellee paid out of the estate a bill amounting to $183.97 for automobile tires which was his own debt. He was insinuatingly interrogated by appellants as to it and explained that he had an automobile for the joint use of himself and his mother and that it was customary for her to pay such bills as her share of the upkeep of the car. It is now set up that he was not entitled to make the explanation owing to her death and that he was in effect asserting a claim against the estate which he could not prove by his own testimony. The appellants opened up the subject by their interrogations. He was entitled to offer his explanation of why the bill was paid by the estate: Corson's Est., 137 Pa. 160; Boyd v. Conshohocken Worsted Mills, 149 Pa. 363; Hambleton's Est., 166 Pa. 500; Danley v. Danley, 179 Pa. 170; Watkins v. Hughes, 206 Pa. 526; Mack's Est., 278 Pa. 426.

The decree is affirmed at appellants' cost.