## La Rocca Trust.

Argued April 30, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused November 4, 1965.

*Richard H. Knox,* for appellant.

*Samuel H. High, Jr.,* with him *High, Swartz, Roberts & Seidel,* for appellee.

OPINION BY MR. JUSTICE EAGEN, September 29, 1965:

Joe La Rocca is the trustee of certain real estate for the benefit of his grandson.[1] This is an appeal from a decree below confirming his first account (to which the beneficiary filed multiple objections) and refusing to remove the trustee.

Primarily, the contest involves moneys allegedly expended by the trustee in improving real property

---

[1] The facts incident to the creation of the trust are set forth in *La Rocca Trust,* 411 Pa. 633, 192 A. 2d 409 (1963).

(the trust res) by the construction of a new building thereon.

Appellant first asserts that the payments for the cost of construction were presumptively gratuitous additions to the trust corpus, on the grounds that there was a prior written declaration of trust establishing a donative intent ab initio, a prior oral declaration of intent to construct this building, and no indication, oral or written, to establish that the trustee intended these expenditures as "advances". None of the cases,[2] cited in support of this position, is here applicable. Each of those cases deals with a banking (savings) account, held in trust for another, and to which additions were held to be presumptively in trust also. We note the separate body of law which has grown around such trusts since the decision of the New York court in *Matter of Totten*, 179 N.Y. 112, 71 N.E. 748 (1904), and note the differences which abound in the situation here present. Bank accounts of this nature are purely within the power of the settlor to augment or decrease, according to the daily exigencies of his life. Improved real estate, on the other hand, is substantially incapable of sudden and variable liquidation. Joe La Rocca stated his benevolent purpose in 1954 when he took title to the real estate in trust for his grandson. He should not be financially punished because he also saw fit to cause the trust to increase its earning power by advancing additional capital for improvements. Also, we have the testimony of the settlor as to what his intention was when he made these expenditures. The same would have been available to all the settlors in the cases cited by appellant (supra note 2) had the

---

[2] *Pavlinko Estate*, 399 Pa. 536, 160 A. 2d 554 (1960) ; *Rodgers Estate*, 374 Pa. 246, 97 A. 2d 789 (1953) ; *Brown v. Monaca Federal Savings & Loan Ass'n*, 352 Pa. 1, 42 A. 2d 50 (1945) ; *Merigan v. McGonigle*, 205 Pa. 321, 54 A. 994 (1903) ; *Gaffney's Estate*, 146 Pa. 49, 23 A. 163 (1892) ; and, *Krewson Estate*, 154 Pa. Superior Ct. 509, 36 A. 2d 250 (1944).

court in each of them not been dealing with the intent of decedents.

The court below was amply justified in determining that these expenditures were considered by the trustee as advances, and for which repayment was expected and justified. The record and the nature and character of the settlor-trustee justify this conclusion, and that the trustee was permitted to look to the increased rentals for recompense.

Appellant's second contention is that the costs of construction were paid by the La Rocca Supply Co., Inc.[3] (Company), not by the trustee. We conclude, with the exception of those items where payment was made by means of credits upon the various accounts of the subcontractors with the Company for the work performed, that the record supports the auditing judge's conclusion that these improvements were made at the personal expense of the trustee.

Finally, appellant claims that the auditing judge erred in granting unproved claims, or in allowing too much credit for certain of the items. While recognizing the difficult task which faced the auditing judge and the admirable manner in which the knotty questions were unraveled, we conclude that certain objections are meritorious, and that the decree is in need of modification.

Our studied consideration of the record compels the conclusion that the total credit for construction expenditures properly allowable is $9,972.22.[4]

---

[3] The Company is a Pennsylvania business corporation organized for the general purpose of selling building and construction material to the public. While there is some dispute in the record as to the identity of the corporate officers, it is apparent that the Company was a closely held family corporation with the majority of the shares being held by settlor and the minor beneficiary's father.

[4] We refrain from discussing each construction cost item to avoid an unwarranted lengthy opinion.

180

We find no error in the lower court's allowing the trustee a credit for "compensation" in the amount of $970. This was a matter peculiarly within the knowledge, competence and experience of the court below. See, *Mastria Estate,* 413 Pa. 278, 196 A. 2d 653 (1964).

We also find no error in the court's refusal to remove the trustee. As stated in *Fraiman Estate,* 408 Pa. 442, 449, 184 A. 2d 494, 497 (1962), ". . . the 'removal of a trustee is a drastic action, which should only be taken when the estate is actually endangered and intervention is necessary to save trust property'. [Citing cases] . . .; in the second place, the removal of a trustee is a matter which lies in the discretion of the court below and, in the absence of an abuse of discretion, that court's action will not be disturbed: [citing cases]." Restatement 2d, Trusts, §107, comment c, states that "mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust." Furthermore, comment f to that section states that the court should remove the trustee less readily when he has been named by the settlor. And this is even more apparent when the settlor himself is the trustee. Suffice it to say that we find no abuse of discretion in the lower court's action in failing to remove Joe La Rocca as trustee, in view of its finding that his administration of the trust has resulted in substantial benefit to the estate rather than to place it in jeopardy of dissipation.

Instead of removing the trustee, the court below deemed it wise to appoint a disinterested party, the Industrial Bank and Trust Company, as co-trustee. No one challenges this action as such. However, we state in passing that we approve of such action, in view of past indications of failure to keep exacting records and of the intra-family friction which now exists. See, Restatement 2d, Trusts §108, comment e.

In order to determine the proper balances in this accounting, it is necessary to substitute the figures herein determined. As the court below pointed out, it is necessary first to establish what the estate balance should have been in 1958 in order to determine what portion of the above totaled expenditures is attributable to the trustee's personal expense, and what portion would and should have been paid by the trust corpus. In so doing, we agree with the court below that interest on any balance in the trust estate should be allowed at the prevailing rate. This is done because the allowance of such interest is not to be looked upon as a penalty upon the trustee, but rather as what the estate would have realized had the funds been segregated. Empirical examination fails to afford us an indication of what the court below considered to be the "prevailing rate" during the period 1954-1958, and in lieu thereof we substitute the reasonable figure of 3%.

Accordingly, the trustee is charged with the following income and credited with the following expenses:

| Year | Income | Taxes | Balance | Interest (3% through 1958) |
|---|---|---|---|---|
| 1954 | $ 560. | $ 88.93 | $ 471.07 | $ 56.53 |
| 1955 | 630. | 100.45 | 529.55 | 47.66 |
| 1956 | 840. | 117.18 | 722.82 | 43.37 |
| 1957 | 840. | 136.60 | 703.40 | 21.10 |
| 1958 | 570. | 21.23 | 548.77 | |
| | $3440. | $464.39 | $2975.61 | $168.66 |

Thus, the estate should have shown a balance of $3,144.27 in 1958, representing income receipts, less expenses, plus simple interest on the various balances. As above pointed out, the allowable credits for the construction of the building total $9,972.22. Thus, the trustee advanced the difference, or $6,827.95, to the estate from his own funds.

182

We are inclined to disagree with the court below that it is well established that interest at 6% is allowable on moneys advanced to the trust estate by the trustee. Indeed, *Carpenter's Appeal*, 2 Grant 381 (1858), cited as authority by the court below, did allow a trustee to recover 6% interest on money lent by him to the trust estate. However, the question there was whether or not interest was allowable at all, not the amount thereof. Interest is, in fact, allowable (see also, *Lessee of Dilworth v. Sniderling & Lewis*, 1 Binn. 488 (1808)); however, we do not feel that the court below was compelled to allow interest at the rate of 6%. We are persuaded by appellant's argument that it would be inequitable to allow the beneficiary interest "at the prevailing rate", and to allow the trustee 6% for moneys advanced to the trust in the present complex situation. Since the court below concluded that the trustee was not deprived of interest on his advances by his conduct (in which we find no abuse of discretion), we declare that the trustee is entitled to simple interest at the prevailing rate, and in lieu of a specific finding on that point, we allow him 3%, as was done for the beneficiary.

The status of the income account as of September 30, 1963, as modified by the changes herein made, is reflected by the chart below:

| Year | Income | Taxes | Repairs | Interest at 3% To Trustee | Reduction of Advance | Balance to Corpus | Interest at 3% To Beneficiary Through September 1963 |
|------|--------|-------|---------|---------------------------|----------------------|-------------------|------------------------------------------------------|
| 1959 | $ 3420. | $ 366.71 | $ 75. | $204.84 | $2773.45 | | |
| 1960 | 3420. | 395.84 | 75. | 121.64 | 2827.52* | | |
| 1961 | 3420. | 407.80 | 75. | 36.81 | 1226.98 | $1673.41 | $ 87.82 |
| 1962 | 3420. | 439.19 | 75. | | | 2905.81 | 65.34 |
| 1963 | 2565. | 460.07 | | | | 2098.93 | |
| | $16245. | $2075.61 | $300. | $363.29 | $6827.95 | $6678.15 | $153.16 |

There should, therefore, be a balance of income, as of September 30, 1963, of $6,831.31. Against this, trustee

---

\* Advance completely repaid at this point.

is permitted to charge a "compensation" of $970, as above discussed. Therefore, the trustee is surcharged in the amount of $5,861.31.

The decree, as modified herein, is affirmed. Each party to bear own costs.