393 A.2d 443

**In re ESTATE of Mary A. CROESSANT, Deceased.**

**Appeal of Virginia Croessant RUDOLPH.**

Supreme Court of Pennsylvania.

Argued April 14, 1978.
Decided Oct. 27, 1978.

J. Kitridge Fegley, Aaron A. Brumbach, Reading, for appellant.

Rhoda, Stoudt & Bradley, D. Frederick Muth, Reading, for appellees, National Central Bank, etc.

Before O'BRIEN, ROBERTS, POMEROY, NIX, and LARSEN, JJ.

## OPINION

POMEROY, Justice.

We are required by this appeal to determine the propriety of a decree removing appellant as a co-trustee of a testamentary trust created under the will of her mother. Appellant argues that the lower court abused its discretion in terminating her office. We agree and will reverse.

Mary A. Croessant, the testatrix, died on February 3, 1971. By her last will and testament dated October 23, 1969, she appointed her daughter, Virginia Croessant Rudolph, the

appellant, as executrix of her will. In a separate provision, the testatrix appointed appellant and the Reading Trust Company, now the National Central Bank, appellee herein, as trustees of two trusts created by the will. The first of these, denominated a "Trust for Valerie Lynne Rudolph" (daughter of appellant and granddaughter of testatrix), provides for monthly payments of income and distributions of portions of the principal to Valerie upon her attaining ages 30, 45 and 60, respectively, at which latter time the trust shall terminate. The second trust consists of the residue of the estate. The will provides for monthly payments of $100 out of income to each of the two sisters of testatrix for their respective lives; the balance of income is to be paid to appellant in monthly installments during her lifetime. She is also given a right to invade principal to the extent that the trustees find necessary from time to time for the "support, maintenance, medical care and nursing care of my said daughter" (appellant).[1] The will further directs that so long as Virginia Croessant Rudolph lives, the corporate co-trustee shall be guided solely by her written advice as to investment or reinvestment of the trust principal, and shall not be liable for any loss occasioned by such reliance.

Letters testamentary were issued to the appellant on February 16, 1971. Little action was taken to administer the estate, however, and on January 5, 1975 appellant was removed, without objection, as executrix on petition of National Central Bank. The bank and appellant's daughter Valerie were appointed "succeeding executors" by the Register of Wills, having been named as such in the will. Premised upon her actions, or lack thereof, with respect to the administration of the estate, the bank, on September 5, 1975, petitioned the court for removal of appellant as co-trustee under the will. Following an evidentiary hearing,

---

1. Upon the death of appellant, the residual trust is to continue for the benefit of Valerie with monthly payments of income and periodic distributions of principal until Valerie attains the age of fifty, at which time the trust is to terminate, and the balance of the trust res is to be distributed to her. Should Valerie die without issue prior to attaining the age of fifty, the balance of principal is awarded in equal shares to the two sisters of testatrix or their issue.

the orphans' court ordered appellant removed as trustee. It also decreed that appellee-bank be relieved of the testamentary directive that it comply with appellant's written instructions concerning the investment of the trust property. Exceptions were dismissed and this appeal followed from the decree of removal.[2]

In ordering the appellant removed as trustee, the lower court relied principally on the testimony of Donald K. Bobb, Esq., a lawyer who had represented her as executrix.[3] His testimony revealed a pattern of inattention and neglect on the part of Mrs. Rudolph pertaining to the administration of her mother's estate. Her repeated failure to respond to counsel's inquiries and admonitions concerning estate matters culminated in the resignation of Mr. Bobb as counsel. This neglect was evidenced by the fact that corporations in which the decedent owned stock were not notified of the death nor were dividends and interest on the securities collected; state and federal income and death tax returns went unfiled; and taxes due on the estate were never paid. As further evidence of the appellant's inability to participate effectively as a trustee under the provisions of the will, the witness noted that on two occasions Mrs. Rudolph inquired into the possibility of removing the bank as a co-trustee. Appellant did not dispute the charges of her neglect in administration of the estate. Rather, her excuse was that she was incapacitated by numerous illnesses during the period in question.[4] Appellant testified that she had now recovered her health and desired to act as trustee, and in so doing would cooperate with the bank as co-trustee. As

2. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1978–79) since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S. § 722 (effective June 28, 1978).

3. Mr. Donald Showalter, a trust officer with appellee bank, also testified and corroborated much of the testimony of Mr. Bobb.

4. The catalogue of appellant's maladies, as testified to by her, included a periodontal condition, endodontia, viral influenza, whiplash resulting from an automobile accident, digestive difficulties and a ruptured appendix.

indicative of her ability to function responsibly she cited her successful management of her own considerable holdings. This testimony was corroborated by that of Mrs. Rudolph's accountant, James E. Berta, Jr., and her daughter, Valerie. Moreover, Valerie, the primary beneficiary under the trusts, twenty-seven years of age at the time of the hearing, testified that she desired that the appellant be allowed to continue as trustee. It is in light of this record that the action of the lower court must be viewed.

## II.

There is no doubt that the court of common pleas, acting through the orphans' court division, has authority over the administration of testamentary trusts. *See* Section 711 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 711 (1975); *Coleman Estate,* 456 Pa. 163, 317 A.2d 631 (1974); *Dillon Estate,* 441 Pa. 206, 272 A.2d 161 (1971); *Wilson v. Board of Directors of City Trusts,* 324 Pa. 545, 188 A. 588 (1936). Under this authority the orphans' court may remove a trustee whenever the interests of the trust are likely to be jeopardized by the trustee's continuance in office. *See* Section 3182 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 3182 (1975); *Quinlan Estate,* 441 Pa. 266, 273 A.2d 340 (1971); *Beichner Estate,* 432 Pa. 150, 247 A.2d 779 (1968); Restatement (Second) of Trusts, § 107 (1959); II Scott on Trusts, § 107 (3rd ed. 1967). Removal of a trustee is, however, a drastic action, and proof of the need for this remedy must be clear. *Quinlan Estate, supra; DiMarco Estate,* 435 Pa. 428, 257 A.2d 849 (1969); *Fraiman Estate,* 408 Pa. 442, 184 A.2d 494 (1962); *Corr Estate,* 358 Pa. 591, 58 A.2d 347 (1948). Especially is this so where, as here, the person named as trustee enjoyed the special confidence of the decedent as evidenced by the specific appointment of the person as trustee in the will. *Estate of Nassar,* 467 Pa. 325, 356 A.2d 773 (1976); *LaRocca Trust,* 419 Pa. 176, 213 A.2d 666 (1975); *Hodgson's Estate,* 342 Pa. 250, 20 A.2d 294 (1941); *Bailey's Estate,* 306 Pa. 334, 159 A.2d 549 (1932); Restatement (Second) of Trusts, § 107, Comment *f*

(1959); II Scott on Trusts, § 107.1 at 849 (3rd ed. 1967). Hence, "[w]hile the removal of a trustee is a matter resting largely within the discretion of the court having jurisdiction over the trust, it is equally clear that an abuse of that discretion renders its exercise subject to review." *Crawford's Estate*, 340 Pa. 187, 190, 16 A.2d 521 (1940). Accord: *Scientific Living, Inc. v. Hohensee*, 440 Pa. 280, 270 A.2d 216 (1970); *LaRocca Trust, supra; Holmes Trust*, 392 Pa. 17, 139 A.2d 548 (1958); *Glessner's Estate*, 343 Pa. 370, 22 A.2d 701 (1942).

The court's action in the case at bar was based upon two findings: (1) that a hostile relationship existed between Mrs. Rudolph and the bank, her co-trustee, and (2) that Mrs. Rudolph was incapable of performing her fiduciary duties in the administration of the trust.[5] For the reasons that follow we are satisfied that neither finding is supported by the record and that accordingly, the lower court erred as a matter of law in terminating appellant's office.

### A.

It is true, as the trial court noted, that hostility among trustees or between a trustee and beneficiary may be so severe as to justify relief by removal in order that the

---

**5.** In dismissing appellant's exceptions the court en banc concluded:

"Our reluctance to remove a fiduciary appointed by a decedent is referred to in our Order and we would point out that since the decedent, the mother of Mrs. Rudolph, appointed her as a co-trustee of her estate and directed her to advise the National Central Bank, her co-trustee, with reference to investments placed an even greater obligation upon Mrs. Rudolph to communicate and cooperate with her co-trustee, an obligation which she failed to carry out because of her continued neglect of her duties. We regretfully arrived at the conclusion that the exceptant's attitude demonstrated a hostility toward her co-trustee, which conduct was not justified.

\* \* \* \* \* \*

"Reviewing all of the testimony in the light of the law, we can only conclude that we were not in error in removing Virginia Croessant Rudolph as co-trustee in the estate of her mother, Mary A. Croessant, because of her conduct of neglect and hostility, and her failure to carry out the obligations imposed upon her by the law and by the provisions of the Will of her mother, Mary A. Croessant."

proper administration of the trust be not jeopardized. *See, e. g., DiMarco Estate, supra; Beichner Estate, supra; Hughes' Estate (No. 1)*, 319 Pa. 321, 179 A. 577 (1935); *Hurley's Estate*, 313 Pa. 53, 169 A. 81 (1931); Restatement (Second) of Trusts, § 107, Comment *a* (1959). In the case before us, however, there is an absence of convincing evidence that hostility between the two trustees did in fact exist. While appellant on two occasions in the past expressed a desire that the co-trustee resign, she clearly stated her willingness to cooperate with the appellee-bank. Moreover, even if we assume that some degree of hostility between the bank and Mrs. Rudolph does exist, this is not ground for removal unless the ill-feeling can be said to endanger the estate. Cf. *Scientific Living, Inc. v. Hohensee, supra; DiMarco Estate, supra; Fraiman Estate, supra.* There was no such showing in the present case.

## B.

Alternatively, the lower court concluded that appellant's inability as executrix to manage the estate of the testatrix presented adequate grounds for her removal as trustee. It may be accepted that "[w]here the same person is executor and trustee, evidence of his misconduct as executor is admissible in a suit to remove him as trustee." II Scott on Trusts, § 107, at 841-42 (3rd ed. 1967). Cf. *Rentschler's Estate*, 11 D. & C.2d 357 (1958), *aff'd* 392 Pa. 46, 139 A.2d 910 (1958). As observed earlier, however, removal of a trustee is a drastic action and therefore it must clearly appear that the misconduct in the capacity of executor will likely continue with respect to the trust. Here, appellant's inability to perform as executrix was attributable to her prolonged illnesses.[6] The orphans' court may have been correct in concluding that appellant's state of health was not

---

**6.** It is important to note that the lower court did not completely reject appellant's testimony concerning her illnesses but simply considered her health problems to be insufficient reasons for her omissions with respect to the estate.

a sufficient excuse for her misfeasance,[7] but the uncontroverted evidence indicates that appellant is now in good health. The record is devoid of any evidence to support a finding that appellant's incapacity to serve as a fiduciary will continue now that her health has been restored. In the words of the governing statute, the orphans' court is to remove a trustee due to incompetency only where "the incompetency *is likely to continue* to the injury of the estate" (emphasis added).[8]

 In the case at bar, there is no showing that the trust property is in any immediate danger[9] or that appellant has failed with respect to any duty as a trustee.[10] We cannot ignore the fact, finally, that the primary beneficiary under the trusts, Valerie Lynne Rudolph, has indicated her desire that the appellant continue as trustee. Should appel-

7. The orphans' court's removal of appellant as executrix was not appealed and is not here challenged. Such a final decree is not, however, binding on this Court as "law of the case" and does not prevent us from reviewing the evidence anew to resolve the wholly distinct issue of appellant's ability to serve as trustee. See generally, *Burke v. Pittsburgh Limestone Co.*, 375 Pa. 390, 100 A.2d 595 (1953).

8. *See* Section 3182(3) of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 3182(3) (1977). While Section 3182 refers to personal representatives, Section 7121 of the Code indicates that the same criteria for removal apply to trustees.

9. The record and appellee's brief indicate some concern over the extremely conservative investment philosophy of appellant. We note, however, that appellant *assisted in the handling of her mother's property* following the death of appellant's father and that the testatrix was thus familiar with the investment policies and financial transactions of appellant. In light of this knowledge of the testatrix, a court should be loath to interfere with the desires she expressed in her will. *Beichner Estate, supra* ; Restatement (Second) of Trusts, § 107, Comment *f* (1959). The record indicates, furthermore, that appellant has successfully managed her own holdings (greater than those presently in the trust) for a number of years.

10. Although the record before us does not indicate whether the trusts in question have commenced or been funded, it does appear that at the direction of appellant, the two sisters of testatrix began receiving their monthly income payments of $100 (under the terms of the residue trust) shortly after the death of the testatrix. The granddaughter has expressly waived any right to present income under the separate trust for her benefit.

lant prove in the future to be incapable of acting as a responsible co-trustee with the bank, there will be no obstacle to renewal at such time of the petition for her removal.

Decree reversed. Costs on the estate.

EAGEN, C. J., and MANDERINO, J., did not participate in the consideration or decision of this case.