## Zaleski Estate

*William R. Keen, Jr.*, for petitioner.
*William H. Mitman*, for administrators.

WOOD, *J.*, May 15, 1980—This matter came on for hearing on April 23, 1980 on the petition of Ann M. Greene to remove Frank J. Zaleski and Mary Zaleski as administrators of the estate of Joseph A. Zaleski, deceased, and to revoke letters of administration issued to the Zaleskies. Ann M. Greene is the mother and sole surviving parent of Joseph A. Zaleski, Jr., the son of decedent; Mrs. Greene was formerly married to decedent, but she was divorced from him prior to his death and currently resides in West Virginia. Frank and Mary Zaleski are the parents of decedent, and reside in Wagontown, close to where decedent was living at the time of his death. Joseph A. Zaleski, Jr., called "Alex," was living with his mother until some time in 1979 and was at the time of decedent's death in February of 1980 living with decedent in Wagontown. He now lives with the grandparents. He expressed the wish that his grandparents be permitted to administer his father's estate.

James Dunworth, Register of Wills, issued letters to Frank and Mary Zaleski on February 8, 1980. Apparently no notice of intention to do so was given to Ann M. Greene. The Zaleskies then went through the residence of decedent to inventory his personal assets, and they removed some objects, principally firearms, to their own premises for safekeeping. Their inventory disclosed no gold or silver or stolen objects. They have also permitted a brother of decedent to live in decedent's house, rent free, although

458

the brother (Lamont) is obliged to pay certain of the carrying costs of the house, such as telephone and fuel oil. The current administrators are also considering the institution of suit on behalf of the estate, arising out of the circumstances under which decedent met his demise.

There was considerable controversy in the testimony about whether or not decedent had on the premises, at the time of his death, gold and silver coins and other stolen objects, and whether or not those objects were being spirited away by the administrators and Lamont, so as not to be included in the inventory of the estate. Ann M. Greene testified to certain supposed conversations with Alex and with the current administrators concerning these objects, and the latter denied that the conversations took place. Apparently decedent had been charged with stealing some of these objects, and a search of the premises had also been conducted some time previously by the police. The court is not aware of the outcome of that search.

The court considers that the burden of proof on this particular issue lies with petitioner, Ann M. Greene, and that she has failed to carry her burden of persuading us that there were gold and silver coins and other stolen objects in the house at the time of decedent's death, which the older Zaleskies spirited away for their own use.

There are two main questions for disposition:

1. Should Ann M. Greene, as natural guardian of Alex, who is entitled to receive the entirety of decedent's estate, have been appointed as administratrix of the estate in preference to the grandparents?

2. Has the conduct of the grandparents in administering the estate been such as to warrant this court in removing them as administrators?

As to issue number 1, the Probate, Estates, and Fiduciaries Code, 20 Pa.C.S.A. §3155, categorizes certain orders of priority, one of which is that letters of administration shall be given to those entitled under the intestate laws. The statute is not particularly clear on whether or not there is a sub-order of priority in that category, based on the order of priority of taking the estate under the intestate laws, but for purposes of our decision here, we need not necessarily decide that question. It is the contention of Ann M. Greene that since Alex comes before the grandparents in the order of distribution under the intestate laws, he (or actually, she, as his natural guardian), should be given priority over the grandparents for appointment as administratrix. However, we note that section 3156 of the code says that a child under the age of 18 (which Alex is) shall not be appointed as an administrator, and there appears to be neither case law nor statute indicating that if a child is under the age of 18, his or her guardian shall be appointed. In addition, section 3157 says that the register may in his discretion refuse to appoint out-of-state administrators. In addition, we have the preference of Alex himself for his grandparents to be appointed. We also have the statement on page 338 of 2 Hunter, O.C. Commonplace Book, Executors and Administrators §11, that a guardian should not be appointed administrator.

It seems to us that it would certainly have been the better practice for the Register to have given notice to Alex's mother prior to making the appointment that he did (see Frantz Estate, 32 D. & C. 2d 351 (1963); see, also, Strickland Estate, 74 D. & C. 2d 550, 553 (1975), but in view of the fact that we consider that the register made the correct decision in any event, and that Ann M.

Greene has had her opportunity to present her side in court, we consider the failure to have given notice to be harmless error at this point.

As to the question of the fitness of the Zaleskies to administer the estate, we note that in his introductory remarks to the court, counsel for Ann M. Greene indicated that the interests of the grandparents were adverse to the interest of Alex. Actually, what appears to be the case is that the grandparents feel hostile towards Ann M. Greene, and their hostility appears to be returned by Mrs. Greene. However, there appears to be no conflict in the positions or attitudes of the grandparents and Alex.

The Supreme Court has set forth guidelines established by case law on this subject:.

"(1) [A]n orphans' court has the power to remove a fiduciary if for any reason the interests of the estate are likely to be jeopardized by his continuance in office. . . .

"(2) [T]he removal of a fiduciary lies within the discretion of the orphans' court and the appellate court simply inquires whether the court has abused its discretion in the matter. . . .

"(3) [T]he removal of a fiduciary is a drastic action which should only be taken when the estate is endangered and intervention is necessary to protect the property of the estate. . . .

"(5) [T]o justify the removal of a testamentary personal representative the proof of the reasons therefor must be clear.

"(6) [T]he existence of ill-feeling between the personal representatives will not, per se, serve as a ground for the removal of the personal representatives unless it be clearly shown that such ill-feeling endangers the estate. . . ." Scientific Liv-

ing, Inc. v. Hohensee, 440 Pa. 280, 294-5, 270 A. 2d 216 (1970). See In re Estate of Mary A. Croessant, 482 Pa. 188, 393 A. 2d 443 (1978).

The legislature also has set forth grounds upon which the orphans' court has authority to remove an administrator. Two of these grounds are pertinent here—where he is wasting or mismanaging the estate or where the interests of the estate are likely to be jeopardized by his continuance in office: 20 Pa.C.S.A. §3182.

Although the court is concerned with the fact that the grandparents are permitting Lamont to reside in decedent's house rent free and with the fact that no impartial person is present in these proceedings whose responsibility it is to look out for Alex's interests, these misgivings do not appear to us, at this point, to constitute grounds for removal. See Croessant, supra. There has been no persuasive showing that the estate is in any immediate danger or that the current administrators have failed with respect to any of their fiduciary duties. Moreover, the primary beneficiary of the estate has indicated his desire that his grandparents continue as administrators. If they prove incompetent to act as administrators in the future, nothing will prevent the petitioner from seeking their removal at that time, or from challenging the account which they file.

## ORDER

And now, May 15, 1980, the rule to show cause heretofore issued is discharged, and the petition of Ann M. Greene to revoke letters of administration is dismissed.