# In re Camillo

C.P. of Philadelphia County, no. 138 DE of 2009.

*Joseph P. McGowan,* for petitioner.
*Edward J. Gilson,* for respondent.

O'KEEFE, *J.,* June 30, 2010—Doris J. Camillo died intestate on January 17, 2008 at Artman Assisted Living, a nursing home and assisted living facility. At the time of her death, Mrs. Camillo owned a home at 412 East Allens Lane in Philadelphia and held some cash assets.

Mrs. Camillo was survived by her four daughters: Karen Senske, Deborah Fulton, Linda Cohen, and Cheryl Schrier. Her husband, Wallace R. Camillo, had predeceased her in 2007.

On September 10, 2005, Mrs. Camillo and her husband, Wallace R. Camillo, signed identical wills. One of these wills appears as exhibit P-1 in the record in this matter. Exhibit P-1 gives the residue of the decedent's estate in equal, one-third shares, to daughter Linda Cohen; to daughter Deborah Fulton; and to daughter Karen Senske. Daughter Cheryl Schrier is bequeathed a mere $1. Exhibit P-1 names Karen Senske as executrix and Deborah Fulton as the successor executrix.

On January 8, 2007, Doris Camillo's husband, Wallace Camillo, died. Following his death, daughters Deborah

and Karen assumed the responsibility of the care of Mrs. Camillo. Karen handled Mrs. Camillo's finances and Deborah handled her medical care.

On June 17, 2007, Deborah assumed the full care of Mrs. Camillo.

Thereafter, in the summer of 2007, Mrs. Camillo destroyed her September 2005 will, and hired attorney Charles McKee, Esquire, to draft her a new will. Mrs. Camillo's 2007 will was never completed or signed.

On January 17, 2008, Mrs. Camillo died.

On February 16, 2008, Cheryl cleared out Mrs. Camillo's room at Artman Assisted Living. Cheryl distributed much of her mother's remaining clothing and furniture to charitable organizations. Any additional furniture was sent back to Mrs. Camillo's prior residence at 412 East Allens Lane in Philadelphia, Pennsylvania.

Following her mother's death, Deborah petitioned the register of wills for letters of administration to the estate of Doris Camillo, deceased. Accordingly, Deborah requested that each of her three sisters renounce their right to serve as administratrix of Mrs. Camillo's estate, in favor of Deborah assuming this role. Her sisters Linda and Cheryl immediately signed and notarized the renunciation form. Karen did not.

On February 27, 2008, Deborah sent Karen an email requesting that she sign the renunciation. A copy of said email appears as exhibit P-4 in the record in this matter. The email reads as follows:

"It would be very helpful if you would now sign the renunciation form so we can move forward with Mom's

132

estate. If you elect not to sign the renunciation form and an attorney must be retained to handle Mom's estate, it will cost a minimum of $15,700 from Mom's hard-earned estate. This makes no sense, is a genuine waste of Mom's money, and I am sure that Mom would not want it this way. She trusted me and so should you. So let's move on. I need to know your answer by Monday, March 3. . . . I already have people interested in the house and in the car, and you are wasting time and potentially wasting a lot of money. . . ."

On March 19, 2008, Karen signed the renunciation form.

On June 3, 2008, Karen received an email from Gayle Benjamin Hall. The email was addressed to Cheryl but forwarded to each of the sisters. This email thanked the sisters for sending Ms. Hall a box of Mrs. Camillo's items.

On June 3, 2008, Karen emailed an attorney, Edward Gilson, with questions regarding the proper handling of Mrs. Camillo's estate and distribution of assets. A copy of this email appears as exhibit P-7 in the record in this matter.

On June 10, 2008, Karen drafted a list of specific items, both sentimental and valuable, that she wanted from her mother's home. Karen sent this list to Mr. Gilson, who then forwarded the list to Deborah. A copy of said list appears as Exhibit P-8 in the record in this matter.

On June 13, 2008, the register of wills issued a decree appointing Deborah Fulton to serve as administratrix of the estate of Doris Camillo, deceased.

On December 27, 2008, a group of Mrs. Camillo's family members, including her daughters Deborah,

Cheryl, and Linda, their husbands and children, went to Mrs. Camillo's house to sort through and claim desired assets. Neither Karen, her husband, nor her children, were present at the house on this date. The family in attendance set aside nearly 20 items for Karen; a number of the items reserved were those delineated in Karen's June 10th email list, including those with sentimental value.

On January 8, 2009, Karen received notification from her attorney, Joseph McGowan, that many of the items requested in her June 10th email list had been donated to charity.

January 19, 2009 and on May 7, 2009, Deborah donated many of Mrs. Camillo's unclaimed personal items to the charitable organizations "New Life" and "Purple Heart".

January 26, 2009, Karen entered her mother's house for the first time since her death, under the supervision of the attorney Mr. Gilson. At this time Karen found the house was virtually empty.[1]

On January 27, 2009, Karen filed a petition for citation directed to Deborah to show cause why this court should not remove Deborah as administratrix and appoint a neutral administrator for Mrs. Camillo's estate. In her petition, Karen requested this court to order an accounting of Deborah's administration of the estate. She also

---

1. Karen created an inventory of over 900 items that she remembered being in the house prior to her January 26, 2009 visit. A copy of said inventory appears as exhibit P-10 in the record in this matter. Deborah also provided an inventory of the items in her mother's house prior to January 2009. A copy of this inventory appears as exhibit P-11 in the record in this matter.

asked that this court surcharge Deborah for Karen's expenses, losses and attorney's fees, as Karen claimed that she incurred legal fees in order to protect her interests in her mother's estate from Deborah. Karen alleged that Deborah had created an adversarial relationship between the sisters by failing to communicate with Karen. Karen further asserted that Deborah willfully destroyed items desired by Karen, and made inequitable distributions of estate property to other heirs contrary to the intestate laws of the Commonwealth of Pennsylvania. Karen contended that Deborah's failure to appraise, inventory, distribute, or provide an accounting of tangible personal property of their mother's estate was a violation of Deborah's fiduciary duty as administratrix of the estate. Finally, Karen maintained that Deborah's failure to file the inheritance tax return, failure to account for the disposition of decedent's cash assets and bank accounts, and failure to market and sell the decedent's real estate was both a violation of her fiduciary duty and a cause of additional expenses for the estate. Based on these assertions, Karen asked that this court remove Deborah as administratrix and appoint a neutral party to administer the estate in her stead.

On March 6, 2009, this court ordered and decreed that a citation be directed to Deborah to show cause why she should not be removed from her office as administratrix of the estate of Doris J. Camillo, deceased; why the letters of administration granted to her as administratrix should not be vacated; and, why she should not be ordered to file an account.

On April 22, 2009, Deborah filed an answer and new matter to Karen's petition, asking that this court dismiss

Karen's aforementioned petition to remove Deborah as administratrix. In her answer, Deborah claimed that the adversarial relationship between the sisters had existed for some time. Deborah maintained that she had provided an accounting of the personal items found thus far in Mrs. Camillo's estate, and denied that she had willfully destroyed or inequitably distributed any of these items. In her new matter, Deborah asserted that the estate of Doris Camillo had been advertised since July of 2008, is current on its bills and has filed income tax returns. Deborah averred that on April 4, 2008, she made an inheritance tax payment in the amount of $16,000, in order to secure a discount in excess of $800. She explained that the estate contacted the inheritance tax division regarding an extension on filing the inheritance tax, as the house had yet to be sold. Deborah stated that she intends to provide an accounting of Mrs.Camillo's estate upon the sale of her mother's property at 412 East Allens Lane in Philadelphia. With regards to the distribution of assets, Deborah maintained that on April 30, 2008, she provided Karen with a letter listing assets of the estate and took reasonable steps to secure items those sought by Karen and even delivered them to her.

On May 6, 2009, Karen filed an answer to new matter of respondent, Deborah Fulton, denying all claims therein. Karen argued in her answer that Deborah distributed estate assets contrary to intestate laws and permitted estate assets to diminish in value. Karen asserted that there were items of personal property with sentimental and monetary value that Deborah threw away, donated or distributed to others, despite the fact that Karen had made multiple requests to receive such items.

136

On January 25, 2010, a hearing was held before this court on the pleadings in this matter. At said hearing, this court heard the testimony of the petitioner Karen Senske and respondent Deborah Fulton, as well as the testimony of Gayle Hall Benjamin, Francis Senske, Helen Byrnes, Barbara Huggett, and Robert Fulton. The attorney for the petitioner, Joseph Gowan, Esquire, offered 18 exhibits, which were entered into evidence as P-l through P-18. The attorney for the respondent, Edward Gilson, Esquire, offered 6 exhibits, which were entered into evidence as R-1 through R-6.

The court has the exclusive power to remove an administraton 20 Pa.C.S. §3182. Although within the sound discretion of the trial court, removal of an administrator is a drastic action that should only be taken when the estate is actually endangered and intervention is necessary to save trust property. *In Re Francis Edward McGillick Foundation,* 537 Pa. 194, 642 A.2d 467 (1994). Removal of an administrator is a stringent and summary process, thus there must be a substantial reason for removal of an executor. *In Re Hurley's Estate,* 313 Pa. 53, 169 A. 81, 82 (1933). Among other reasons not relevant here, this court may remove an administrator if he or she is "wasting or mismanaging the estate, is likely to become insolvent, or has failed to perform any duty imposed by law; or . . . when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa.C.S. §3182(1), (5).

Karen presented to this court sufficient evidence to show that a majority of the assets of the estate of Doris Camillo were distributed; however Karen has not clearly demonstrated to this court that these assets were dis-

tributed in a wasteful or inefficient manner. This court is of the opinion that Deborah, in her role as administratrix, has properly and reasonably managed the estate of Doris Camillo.

Karen asserted that Deborah mismanaged the estate of Doris Camillo and should thus be removed as administratrix of the estate, and surcharged for losses where she has mismanaged and wasted estate assets and commingled funds. As evidence of this mismanagement and waste, Karen offered the following arguments, that: (1) Deborah failed to inventory and appraise Mrs. Camillo's personal property, (2) Deborah inequitably distributed Mrs. Camillo's tangible personal property, (3) the utility bills and real estate taxes were paid late, the home owners insurance lapsed, and there was insufficient inheritance tax paid for the 412 East Allens Lane property, and (4) the 412 East Allens Lane property was not listed for sale for over one year after Deborah was appointed administratrix.

This court may remove an administrator for waste or mismanagement if (s)he has no plans or knowledge as to how to complete administration of the estate. *In the Matter of the Estate of John W. Frey,* 693 A.2d 1349, 1352 (Pa. Super. 1997). This may be evidenced where he or she has not taken even the threshold steps which are necessary to ensure the effective administration of an estate. *Id.* More specifically, an administrator may be removed for failure to pay decedent's debts, taxes, or interest or failure to maintain property in the estate, especially where he makes no explanation for his lack of action and the mismanagement is likely to lead to insolvency of the estate. *In Re Miller's Estate,* 264 Pa. 310, 314, 107 A. 684, 684-85 (1919).

This court finds that Deborah has been diligent in her management of the estate, and has properly taken all steps necessary to ensure effective administration of the estate. Although Karen claims that Deborah failed to inventory the estate and appraise Mrs. Camillo's personal property, Deborah has testified to and shown evidence of a succinct plan to properly handle the estate. Deborah explained that once she was appointed as administratrix of Mrs. Camillo's estate, she consulted with Mr. Gilson and undertook the affairs of the estate. She collected all of Mrs. Camillo's assets, settled any outstanding debts and made distributions when necessary to the beneficiaries. Furthermore, Deborah collected all bank accounts and life insurance policies in Mrs. Camillo's name, and, secured the proceeds from said assets and opened a separate account for the estate at Citizens Bank. N.T. 198-212.

Deborah testified before this court to her detailed plan to handle the care and distribution of the contents of the estate of Doris Camillo. N.T. 206-209. Deborah testified that her first priority was to clean, organize, and repair the home. N.T. 206-207. Second, she planned to identify which items in the home the family wanted. N.T. 207. Third, Deborah had an appraiser come to determine if there were any assets remaining in the house of value. N.T. 207. Finally, Deborah reviewed the remaining unwanted items, donated the remaining items if functional, and disposed of the waste. N.T. 208.

This court finds that Deborah's actions with regards to distributing Mrs. Camillo's tangible personal property have been equitable and fair. Karen argues that Deborah failed to distribute Mrs. Camillo's personal

property in a prompt, efficient, and just matter. Karen alleges that Deborah began disposing of items within weeks of their mother's death, and that Deborah gave a few of their mother's belongings to Gayle Benjamin, a non-heir, before allowing Karen, a daughter, an opportunity to claim these items for herself. N.T. 183, exhibit P-7. In addition, Karen claims that she only received 18 of the items she requested in her email and that all the other items she received were "offensive" or unwanted. N.T. 55-56.

Deborah responded that the reason that some items were donated immediately following her mother's death was because Ms. Camillo's room at the Artman Assisted Living needed to be vacated in order to avoid incurring a bill for an additional month of rent. N.T. 198. Further, the disputed items were donated before Deborah was appointed as administratrix, and they were not donated by Deborah but by their sister Cheryl. N.T. 185-86.

It is clear that none of the sisters could receive everything she wanted. Each sister did however receive some of the items she desired from her mother's estate. N.T. 210. Once each sister had claimed her chosen items, Deborah arranged for the remaining items to be evaluated for their value. N.T. 207. Valuable items that the family did not want were sold and the rest of the items were either donated or thrown away if not useable. N.T. 208-209. This court finds that the aforementioned process used by Deborah to distribute her mother's assets was reasonable under the circumstances.

Deborah demonstrated her propensity for fairness by equally distributing the proceeds of Mrs. Camillo's insurance policy. As sole beneficiary of the life insurance

policy, Deborah received the full amount of the proceeds. Although Deborah alone was entitled to the proceeds, she divided them equally among herself and her three sisters. N.T. 87.

This court finds that the evidence supports Deborah's claim that she has been diligent in managing the finances of the estate. As evidence of Deborah's mismanagement of the estate finances, Karen proffered testimony that Deborah paid the utility bills and real estate taxes late, caused the homeowners insurance to lapse, and did not pay sufficient inheritance tax for the 412 East Allens Lane property.

The Pennsylvania Supreme Court has held that it is appropriate to remove an executor for failure to pay decedent's debts, taxes, or interest in a timely fashion. *In Re Miller's Estate, supra* at 314, 107 A. at 684-85. Especially when the executor has no explanation for lack of action in managing the estate or mismanagement was likely to cause the estate to become insolvent. *Id.*

This court finds that Deborah's explanation for her lack of action is satisfactory and as she has remedied the situation, the estate is not at risk of becoming insolvent. Deborah admitted that several bills were paid late. She testified that the timing of the payments was not a result of her negligence, but rather because she was unaware of the outstanding bills. N.T. 198. Once Deborah learned of the overdue bills, she paid them and their late fees. N.T. 171, 198. While Deborah has not filed an inheritance tax return, she testified that this action was not the result of neglect but rather because she was advised by counsel that she was not required to file an inventory with the

register of wills or file the inheritance tax until after the house was sold. N.T. 167. On December 17, 2009, Deborah received an extension of time to file the inheritance tax, until June 17, 2010, because the house had not yet been sold. Exhibit R-4; N.T. 200.

Karen contends that Deborah abused her position as administratrix when she used a check signed by Mrs. Camillo after her death. In response, Deborah testified that while she did use the $8,000 check after Mrs. Camillo's death, she accounted for the use of those funds in Mrs. Camillo's estate. N.T. 173. Deborah used the $8000 check to cover debts to the estate, including an inheritance tax payment, funeral payments, and payments for two outstanding bills from Artman Assisted Living. Since Deborah promptly resolved the unpaid bills of the estate and has been diligent in handling the finances of the estate, it would be improper for this court to remove Deborah as administratrix for mismanagement of the estate finances.

Karen points to the fact that Mrs. Camillo's real property was not put on the market until over a year after Mrs. Camillo's death and that Deborah refused an offer. This court finds that this assertion is without merit, as Deborah has taken appropriate steps to dispose of the 412 East Allens Lane property. It has been held that an executor need not be removed for failing to sell real estate at a fair price that had been offered to her in hope of a larger price, especially where the property was kept in good repair. *Parson's Estate,* 82 Pa. 465 (1876). Deborah's delay in placing the property on the market and refusal of the offer is justified given the facts and circumstances presented to this court.

Deborah testified that the property required a lot of repair before it could be viable on the market. The property required repairs to the roof, floors, and walls. These repairs took over 13 months to complete. Deborah, her husband, Robert Fulton, and her sister Cheryl completed the majority of the repairs. After completing the repairs Deborah had the house appraised at $285,000. N.T. 181. Subsequently, at the recommendation of the real estate agent and the estate attorney, Mr. Gilson, the property was listed for $339,900. N.T. 182. When the house was first put on the market there was an offer for $310,000 but Deborah rejected it. N.T. 182. The price was reduced several times. Deborah agreed to all of the price reductions in a good faith effort to dispose of the house as quickly as possible. N.T. 183. Deborah has repaired and maintained the property. It would not be appropriate for this court to remove Deborah as administratrix at this time.

Karen further asserts that Deborah should be removed as administratrix because the animosity and lack of communication between the two sisters has jeopardized the interests of the estate. Karen argues that Deborah breached the agreement made at the time Karen signed the renunciation form through her lack of communication, failure to cooperate, and failure to treat Karen in a fair and equitable manner with regards to the distribution of the tangible assets of the estate. *Brief of petitioner,* 5, 12.

This court finds that the adversarial relationship and lack of communication between Deborah and Karen has not jeopardized the interests of the estate. The adversarial relationship began before the death of Mrs. Ca-

millo. Since February 2008, Karen and Deborah only communicate through their respective attorneys. N.T. 163. Deborah believed that the most appropriate way for them to communicate was through counsel. N.T. 164. Karen claims that the lack of amicable communication between the sisters is cause for removal of Deborah as administratrix because it has lead to the mismanagement and waste of the estate. However, all of the evidence that Karen has presented has not shown that Deborah has wasted or mismanaged the estate.

The existence of ill feelings between an administratrix and a beneficiary will not, per se, serve as grounds for removal except where it can be shown that such ill feelings endanger the estate or the rights of a beneficiary. *Scientific Living Inc. v. Hohensee,* 440 Pa. 280, 295, 270 A.2d 216, 223 (1970). Although ill feelings do exist between Deborah and Karen, Karen has not been able to show that those ill feelings have endangered the estate or her rights as a beneficiary. Deborah has made and executed plans for the administration of the estate, she has attempted to equitably distribute the assets of the estate amongst Mrs. Camillo's heirs, she has handled the finances of the estate, and she has made repairs and a significant effort to sell the remaining assets of the estate.

This court finds that Karen Senske has not met her burden of proof so as to justify removal of Deborah Fulton as administratrix of the estate of Doris J. Camillo, deceased. The petition to remove Deborah Fulton as administratrix will be denied by separate decree bearing even date herewith.