**In re Estate of Bower**

C.P. of Lycoming County, No. 41-11-0692

*Douglas N. Engelman*, for petitioner.
*Patricia Shipman*, for administratrix.

GRAY, *J.*, Sept. 23, 2014—Before the court is John I. Bower Jr.'s petition to remove his mother, Anna Bower, as administrator of the estate of his father, John I. Bower Sr.[1]

---

1. John Bower Jr. filed this petition for removal of Anna Bower as administrator of estate on April 2, 2014 and an amended petition on May 12, 2014.

A non-jury hearing on the petition was held on September 10, 2014. After review of the testimony, exhibits, trial memoranda[2] and arguments of counsel, the court denies the petition for the reasons that follow.

Findings of Fact

John I. Bower Sr. died intestate on May 6, 2011. About six months later, on November 18, 2011, his widow, Anna Bower, petitioned and was granted letters of administration of John I. Bower Sr.'s estate. The petition identified the following heirs and beneficiaries: the deceased's widow, Anna Bower, and the five children of John I. Bower Sr. and Anna Bower: Jacqueline M. Wright, Penelope A. Bower, Carolyn M. Stubler, John I. Bower Jr. and Matthew J. Bower. Once the certification of notice to beneficiaries was filed on January 17, 2012,[3] nothing else was filed to the estate case until April 2, 2014 when John Bower Jr. filed the instant petition for removal of Anna Bower as administrator of the estate.

At the time of John Bower Sr.'s death, he, John Bower Jr. and North Branch Transfer, Inc., (NBT) were plaintiffs in a lawsuit in Lycoming County against Penelope and Matthew

2. The court will consider the facts and procedural history arising from N*orth Branch Transfer Inc., Anna Bower, as Administratrix of the Estate of John Bower, Sr., and John Bower Jr., v. Penelope Bower, Matthew Bower, and Matthew Bower Trucking, Inc.*, No. 09-03094, provided in the trial briefs submitted by counsel for John Bower Jr. and Anna Bower. Both counsel referred the court to their respective trial briefs and relied heavily on them in their closing statements. Neither party objected to the court considering the trial briefs. As a result, the court considers this as a de facto stipulation that the parties submitted those facts into evidence for the court's consideration. This case involves similar parties with a common factual background.

3. Testimony indicated that Carolyn M. Stubler's address is currently unknown and was unknown at the time the estate was opened.

Bower and Matthew Bower Trucking under docket No. 09-03094. Plaintiffs filed that suit on December 30, 2009. An amended complaint was filed in that matter on July 19, 2010. In that lawsuit, plaintiffs sought the following: to enjoin Penelope Bower from dissipating the assets of NBT, to recover funds allegedly converted by Penelope Bower, to recover damages for a breach of fiduciary duty alleged against Penelope Bower as an officer of NBT, to obtain an accounting of NBT, to declare the invalidity of NBT stock issued to Penelope Bower, to seek replevin of equipment and assets belonging to NBT and to declare the transfer of 100 Rose Street to Matthew Bower Trucking null and void. Once John I. Bower Sr. died, ownership of NBT came to the forefront. On February 14, 2014, after a non-jury trial on the sole issue of ownership of NBT,[4] the court found the percentage of ownership of NBT as follows: John Bower Jr., 25%, Penelope Bower, 25%, and the estate of John Bower Sr., 50%. The remaining issues were scheduled for trial to begin on April 14, 2014.

On March 27, 2014, Anna Bower, as administrator of the estate and as majority shareholder of NBT, issued a notice scheduling a closed special meeting of shareholders for April 4, 2014.

The stated purpose of the meeting was to:

1) elect a board of directors; 2) review all sales and lease contracts from 1/1/08 onward; 3) vote on continuation as plaintiff in action docketed at no. 09-03,-094 in the

---

4. The parties requested and agreed to a trial on the issue of ownership in the hopes that once that issue was determined, a settlement would follow.

Lycoming County Court of Common Pleas; and 4) transact any other such business as is necessary to the management of the business.

On April 2, 2014, John Bower Jr. obtained an ex parte temporary injunction enjoining the shareholders' meeting for NBT and ordering the withdrawal of any notice of such a meeting until a full hearing. After a hearing on April 3, 2014, the court denied the injunction. On April 7, 2014, Anna Bower issued a new notice for a shareholders meeting to be held on April 13, 2014 to elect a board of directors and discuss any needed business. At the meeting, the shareholders, representing 75% of the NBT shares, voted to discontinue NBT as a plaintiff in the Lycoming Case No. 09-03,-094.[5]

Administration of the Estate

There was very little testimony regarding the details of the administration of the estate. Anna Bower testified

---

5. At the meeting on April 13, 2014, the shareholders made resolutions including the following.

There is insufficient evidence to prove that Penelope Bower embezzled, stole, misappropriated or otherwise misused monies belonging to North Branch Transfer, Inc. This resolution is made following consideration of all evidence that has been brought to light in the case of *North Branch Transfer, Inc., et. al. v. Penelope Bower, et. al.*, docket no. 09-03,094 in the Lycoming County Court of Common Pleas, including but not limited to the deposition testimony of Lynn Resides.

The sale of real estate situates at 100 Rose Street, Williamsport, Lycoming County, Pennsylvania, to Matthew Bower, was necessitated by the inability of North Branch Transfer, Inc., to satisfy the liens against the property. Matthew Bower's assumption of those debts was sufficient and appropriate consideration for the transfer, as it prevented the taking of the property by one or more lienholder. [sic] The transfer of 100 Rose Street, Williamsport, Lycoming County, Pennsylvania, to Matthew Bower, is hereby fully and unconditionally approved.

broadly that there is money in the estate account but she did not testify as to how much money is in the account. She was not questioned on the amount. Anna Bower testified that the taxes have not been paid on the gross amount of the estate and that there is no money to pay those taxes. Anna Bower testified that about $30,000 from the estate account was used to pay legal fees. The rest of the evidence regarding the administration of the estate appears in the trial briefs. John Bower Jr.'s trial brief concurs that there are outstanding tax liens.[6]

Anna Bower's trial brief provides the following information about the administration of the estate.

> As Administrator, Anna Bower has opened the estate for probate, provided all beneficiaries with notice of estate administration, advertised the opening of the estate, notified creditors of the estate, inventoried John Bower, Sr.'s. safe deposit box, and collected information from creditors as to amounts owed.

The estate obtained possession of all trucks titled in the name of John Bower, Sr. The estate intervened in a lawsuit in 2012 and "was able to preserve ownership and possession of the containers for the estate." However, the estate has been "unable to secure possession of trucks and other tangible property owned by" NBT that are stored on John Bower Jr.'s property. "At the time of his death, John Bower, Sr., owed real estate taxes, state and federal

---

6. John Bower Jr.'s trial brief indicates that that John Sr.'s tax liens are in the amount of $128,439.08. It further asserts that evidence in favor of removal exists in that Anna Bower incorrectly verified that the debts of the decedent had been paid when she completed vehicle assignment forms to the Pennsylvania Department of Transportation.

income taxes, and other debts which are expected to far exceed his assets." The trial brief asserts that there is a potential claim by the estate against Bower Container and Services, Inc. (BCS) for failure to pay the debts of John I Bower Sr. during his lifetime as agreed upon at the time of the formation of BCS. Finally, the trial brief asserts that "[t]here are no liquid assets of the estate from which to pay a third-party administrator."

Evidence of Hostility and/or Favoritism

John Bower Jr. contends that his mother should be removed as administrator because she favors his sister and brother and harbors hostility toward him which impacts her administration of the estate. In particular, John Bower Jr. contends that his mother's vote to discontinue NBT arises from hostility and favoritism for his siblings and was detrimental to the estate. Anna Bower continues a relationship with John Bower Jr.'s siblings Penelope and Matthew Bower. Penelope Bower resides with Anna Bower. Anna Bower denies working for Matthew Bower Trucking but communicates with him and has given him access to vehicles and transferred property to him.

The evidence suggests that John Bower Jr. and his mother had a relationship at one time that rapidly deteriorated after the death of John Bower Sr. Anna Bower worked for many years for BCS, operated by John Bower Jr. When John Bower Sr. was hospitalized from a motor vehicle accident, John Bower Jr. and Anna Bower went to Ohio together to be with him. There was some tension between them when John Bower Jr. brought his wife Brenda and her family to Ohio while John Bower Sr. was

hospitalized. This tension worsened when John Bower Jr. took care of all of the funeral arrangements and buried his father in a cemetery with his wife's family. John Bower Jr. paid for the burial out of personal and BCS funds. John Bower Jr. was resentful that his mother did not participate or pay for the arrangements and that she was unwilling to reimburse him for the costs. Anna Bower was resentful that her husband was buried with her daughter in law's family against her wishes. Communications between them ceased when John Bower Jr. refused to discontinue claims against his sister and brother, and his mother stopped working for him. They dispute whether John Bower Jr. fired his mother or whether she quit. In any event, John Bower Jr. told his mother to put all of the business belongings on the porch for him to retrieve. She did that, and John Bower Jr. retrieved them. And, "that was it." They have not communicated since that time. Anna Bower testified that she still loves her son John Bower Jr. and denied having disdain or hatred for him. On cross-examination, she acknowledged calling John Bower Jr. "that thing," and explained that she believes that John Bower Jr. stole from her and her deceased husband.

Discontinuing NBT as Plaintiff in the 2009 Lawsuit

The court finds that the primary reason John Bower Jr. seeks to remove his mother as administrator of the estate is because she voted the estate's shares to discontinue NBT as a plaintiff in the lawsuit against his sister Penelope Bower

and his brother Matthew Bower and Matthew Bower's trucking company.[7] The court will first discuss the claim for misappropriated money against Penelope Bower and next will discuss the claim to invalidate the transfer of real property to Mathew Bower Trucking.

NBT Claims against Penelope Bower

John Bower Jr. contends that his mother's "motives to thwart litigation regarding the misappropriation of the assets of North Branch by Penny Bower are personal and not in the best interests of the estate." John Bower Jr. contends that Penelope Bower stole hundreds of thousands of dollars from NBT. In support of that contention, John Bower Jr. relies upon the deposition of Lynn Resides, an auditor with the Pennsylvania Department of Revenue Bureau of Audits (department of revenue), conducted on October 24, 2012. Mr. Resides audited NBT and Penelope Bower for the years 1999 to 2006. The audit revealed a significant amount of money categorized as "road money" cashed by Penelope Bower but for which she did not have receipts to account for the specific expenses. Because Penelope Bower did not produce receipts for the expenses, the department took the position that it would impute the unaccounted for expenses as income to Penelope Bower. As a result, department imputed hundreds of thousands of dollars of income to Penelope Bower from NBT for income tax purposes.

Imputing income for tax purposes, however, is not

---

7. Since John Bower Sr. had no standing as an individual, the administrator withdrew him as a plaintiff. However, to date, no motion has been made to dismiss the sole remaining plaintiff in that case, John Bower Jr., for lack of standing.

the same as establishing misappropriation of funds. It is undisputed the Bower family frequently used a system by which a family member would write a check to herself for cash and use the cash to pay drivers for expenses such as fuel, tolls and on the road repairs. Since Anna Bower used this system herself without stealing, she does not believe this practice evidences stealing by Penelope Bower. Misappropriation is not the only explanation for the differences. Penelope Bower testified that the fluctuation in amounts arose in part from the variance in which they relied upon the cash system from year to year. In addition, the number of drivers varied from year to year. The need for tires, gas and repairs fluctuated from year to year. Also, some receipts were damaged and lost prior to the audit. There are other possible explanations for the differences. Mr. Resides suspected that perhaps more business was being conducted than was being reported or that the expenses may have been greatly overstated to reduce tax liability. Moreover, Mr. Resides conceded that there may have been a whole class of expenses for income that was not reported for vehicles that did not have an international fuel tax agreement (IFTA) sticker decal. The audit involved IFTA trucks, and specifically the department did not have any records for roll off trucks.

The court concludes that proving claims against Penelope Bower would be difficult and costly.[8] It would be difficult to establish by a preponderance of the evidence that Penelope Bower stole money and how much. Even if

---

8. John Bower Jr. testified that his father could not pay his legal bills and that the attorneys would not take further steps without payment. As a result, John Bower Jr. paid the legal fees.

NBT could succeed in the suit, the court concludes that it is unlikely that the estate would recover significant funds from Penelope Bower. Penelope Bower does not have an attorney; she lives in a rented place with her mother. As a result of the costs and difficulty of being successful in proof and collection on a judgment, the court believes that it was in the best interest of the estate to discontinue the claims against Penelope Bower.

### NBT Claims for Rose Street Property

In addition to claims against Penelope Bower, the lawsuit also sought to invalidate the transfer of property from NBT to Mathew Bower Trucking which was alleged to be for less than fair market value. By a deed dated September 24, 2009, NBT transferred 2 parcels in the Sixth Ward of Williamsport on Rose Street and Dix Street for consideration listed as $43,791.41. The transfer was effectuated by Anna Bower excising her power of attorney for John Bower Sr. as owner of NBT approximately two years prior to his death. Anna Bower contends that in addition to the amount listed as consideration on the deed, Mathew Bower also paid the outstanding liens on the property. Anna Bower could not state whether the liens plus the amount paid equaled the fair market value of the property. On the witness stand, John Bower Jr. testified that his father gave Anna Bower a power of attorney for anything she wanted to do. For that and other reasons, the court believes there is a low likelihood of success on the merits of the claim to void the transfer of the property. In addition to a low likelihood of success of voiding the transfer, the remedy of voiding of the transfer would require that NBT reimburse Matthew Bower for the consideration

and liens that were paid. There was no evidence as to the current fair market value of the property or that NBT has any liquid assets to reimburse Matthew Bower. The court believes it was in the estate's best interest to discontinue NBT's claim to void the transfer of the Rose Street property.

Evidence Regarding Vehicles (89 Mack Roll Off Truck and Kenworth)

In addition to the discontinuation of the lawsuit, John Bower Jr. contends his mother also evidenced favoritism at the expense of the estate by transferring title of the 1989 Mack roll off truck to Mathew Bower Trucking for less than fair consideration and by transferring the Kenworth to herself and allowing Matthew Bower Trucking to run it without proper compensation. Both transfers occurred shortly prior to the letters of administration being granted to Anna Bower in November 2011.

89 Mack Roll Off

On October 24, 2012, Anna Bower transferred the 1989 Mack roll off truck in John I. Bower Sr.'s name to Matthew Bower Trucking to help pay property taxes. Anna Bower contends that BCS failed to honor an agreement to pay those property taxes which were incurred during the lifetime of John Bower Sr. No proceeds from the transfer went into the estate's account. At the time of the transfer, the odometer listed 200,200 miles, the vehicle was 22 years old, and it did not run. There was no effort to obtain an appraisal of the vehicle. Matthew Bower expended funds to restore the 89 Mack roll off to running condition. Anna Bower tried to sell the Mack but no one wanted to

give her money for it because it did not run. Anna Bower did not put a "for sale" sign on it. Anna Bower denies that Matthew Bower Trucking was using the Mack until the spring or summer of 2014. Anna Bower admits that she did authorize Mathew Bower to put a sign on the Mac and run it without compensation to the estate in the spring or summer of 2014. Anna Bower intended to charge Mathew Bower Trucking for running the truck. Anna Bower believes a document was signed about it, but she does not recall if that document indicate what was charged. The 1989 Mack roll off truck has since broken down.

Kenworth 2004

On September 26, 2011, the Kenworth (2004) was transferred into Anna Bower's name as a surviving spouse upon certificate of death. The Odometer was at 80,000. The Kenworth is currently in Anna Bower's name. Anna admits that perhaps she was mistaken in failing to sell it for $25,000, but she believed it would be worth more than that if it worked. John Bower Jr. took possession of the Kenworth around the time of his father's death. He had it locked up on his lot. The Kenworth was removed from his lot. Afterwards, Anna Bower authorized Mathew Bower Trucking to put its sign on the Kenworth and drive it. John Bower Jr. asserts that the estate should have been compensation at three to five thousand dollars per month for use of the Kenworth.

Benefits to John Bower Jr. from the Estate

In response to the claim that Penelope and Matthew Bower have unduly benefitted from Anna Bower's administration of the estate, Anna Bower identified

benefits received by John Bower Jr. from the estate as well as potential claims by the estate against him.

Perhaps most significantly, Anna Bower contends that at the time BCS was formed, there was an agreement that John Bower Jr. would pay the profits of BCS to pay the bills of Anna Bower and John Bower Sr. during his lifetime. As a result, Anna Bower contends that the estate has a claim against John Bower Jr. for the debts of the estate which comprise bills that should have been paid by BCS pursuant to that agreement. Anna Bower has not sued John Bower Jr. pursuant to this potential claim on behalf of the estate. Anna Bower contends that the property taxes, paid by Matthew Bower in consideration for the 89 Mack roll off truck and the Rose Street property, were bills that should have been paid pursuant to the agreement. In addition, Anna Bower contends that one of the bills that John Bower Jr. was obligated to pay under that agreement was the life insurance premiums for John Bower Sr. and which was not paid. Anna Bower did not filed a claim for breach of contract to recover the loss of $900,000 proceeds life insurance proceeds that would have been available to her if the premiums had been paid.

In addition to claims related to the agreement to pay bills during the lifetime of John Bower Sr., there are claims against John Bower Jr. for property belonging to NBT, which is now part of the estate. On August 11, 2010, Penelope Bower filed an answer and new matter in case no. 09-03094 asserting on behalf of NBT claims against John Bower Jr. Those counterclaims averred that John Bower Jr. obtained real property at Reach Road, Catawissa Ave, Dix St. Garage, and 2/3 lots on Wood

Street for less than fair market value. John Bower Jr., contends that the real property transferred was done so that John Bower Jr. could pay extensive fines with the County that were owed. However, a significant amount of those fines were in John Bower Jr. and Mathew Bower's names. The monthly payments on the fines amounted to $1030 per month for John Bower Sr. and $530 per month each for John Bower Jr. and Matthew Bower. Anna Bower contends the amount of fines paid was about $200,000, which she asserts was less than what she and John Bower Sr. originally paid for them. The court further notes that John Bower Jr. and Matthew Bower received a benefit from paying off the County fines that were partially in their own names, regardless of whether they had ever paid or intended to pay anything out of their own pockets for them.

Penelope Bower also sought, on behalf of NBT, possession of red 1996 Freightliner roll off truck; mobile office and its contents; a cardboard baling machine; truck tractors and various trailers property of NBT. In addition, she sought rental income from John Bower Jr.'s having rented roll off refuse containers that belonged to NBT. Evidence was presented that a 1994 freightliner was transferred to BCS after the death of John Bower Sr. without Anna Bower's authorization. Nothing was paid to the estate for running the freightliner. Insurance proceeds were paid to BCS, and some checks paid from BCS to Anna Bower, but no proceeds were paid to the estate.

There was also evidence that John Bower Jr. has a Volvo in his possession that belongs to the estate for which he never paid anything to the estate. Admittedly, the Volvo

does not run and is currently scrap.

## II. Conclusions of Law

1. Any party in interest may petition for removal. 20 Pa.C.S. § 3183.

2. The grounds for removal of a personal representative are set forth in 20 Pa.C.S. § 3182 (2014) as follows.

The court shall have exclusive power to remove a personal representative when he:

(1) is wasting or mismanaging the estate, is or is likely to become insolvent, or has failed to perform any duty imposed by law; or

(2) (Deleted by amendment).

(3) has become incapacitated to discharge the duties of his office because of sickness or physical or mental incapacity and his incapacity is likely to continue to the injury of the estate; or

(4) has removed from the Commonwealth or has ceased to have a known place of residence therein, without furnishing such security or additional security as the court shall direct; or

(4.1) has been charged with voluntary manslaughter or homicide, except homicide by vehicle, as set forth in sections 3155 (relating to persons entitled) and 3156 (relating to persons not qualified), provided that the removal shall not occur on these grounds if the charge has been dismissed, withdrawn or terminated by a verdict of not guilty; or

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office.

3. "Upon removal, the court may direct the grant of new letters testamentary or of administration by the register to the person entitled[.]" 20 Pa.C.S. § 3183.

4. A personal representative of an estate has a "duty to collect the assets of the estate, including any debts." *In re Estate of Andrews*, 92 A.3d 1226 (Pa. Super. 2014), citing the following, including the quoted summaries: *In re Kurkowski's Estate*, 487 Pa. 295, 409 A.2d 357, 360-61 (Pa. 1979) ("A decedent's personal representative is under a duty to take custody of the estate and administer it in such a way as to preserve and protect the property for distribution to the proper persons within a reasonable time."); *In re Wallis' Estate*, 421 Pa. 104, 218 A.2d 732, 736 (Pa. 1966) ("primary duty" of estate's personal representative is "to marshal the assets and to liquidate and terminate as soon as possible"); 20 Pa.C.S. § 3311 ("A personal representative . . . shall take possession of . . . all the real and personal estate of the decedent . . .")

5. "Removal of an administrator, while within the *sound discretion* of the trial court, is a drastic action that should only be taken when it is *evident* that the estate is actually endangered and that court *intervention is necessary in order to prevent further waste and/or mismanagement* of the estate assets." *In Re Francis Edward McGillick Foundation*, 537 Pa. 194, 200, 642 A.2d 467 (1994) (citations omitted)(emphasis added)

6. A conflict of interest justifies removal when the

administrator's personal interest in securing ownership of property conflicts with the estate's interest in establishing ownership of property. *See, e.g., In re Estate of Andrews,* 92 A.3d 1226 (Pa. Super. 2014); *also see, In re Estate of Mumma,* 41 A.3d 41, 51-52 (Pa. Super. 2012); *cf, In re Estate of Westin,* 874 A.2d 139 (Pa. Super. 2005)

7. Hostility, *per se,* is not grounds for removal unless it is established that the ill-feeling endangers the estate. *See, In re Estate of Croessant,* 482 Pa. 188, 195, 393 A.2d 443, 446 (Pa. 1978) *Dimarco Estate,* 435 Pa. 428, 438, 257 A.2d 849, 854 (Pa. 1969). *Estate of Camillo,* 16 Pa. D. & C.5th 129 (C.P. Phila. 2010).

## III. Discussion

The court does not believe that Anna Bower should be removed as administrator of the estate pursuant to the reasons set forth by John Bower Jr.; nor does the court elect to remove Anna Bower as administrator for other reasons sua sponte at this time. The court finds that John Bower Jr. petitioned to remove his mother as administrator of the estate primarily, if not exclusively, over a disagreement about whether NBT should pursue claims against Penelope and Matthew Bower and Mathew Bower's trucking company. This is evidenced by the timing of his petition. Within days of learning that Anna Bower scheduled a shareholders meeting to discontinue the lawsuit against his siblings, John Bower Jr. petitioned for his mother's removal and sought an injunction to prevent the shareholders from meeting. Up until that time, nothing had been filed to the estate case for over two years. The petition for removal focused

on Anna Bower's voting her shares to discontinue the lawsuit against his siblings for personal reasons at the expense of the estate. The court finds that the decision to discontinue the claims against Penelope Bower was sound considering the expense of the litigation, the difficulty in presenting evidence of those claims, the likelihood of success on the merits of those claims and the improbability that any recovery against Penelope Bower could be obtained even if a judgment was entered against her.

In addition to his primary contention that discontinuation of the lawsuit warranted removal of his mother, John Bower Jr. also raised concerns about hostility, bias and favoritism as a reason for his mother's removal. A court should remove an administrator who has a direct conflict of interest with the estate or who exhibits hostility, bias and favoritism that endangers the estate. *See, e.g., In re Estate of Andrews*, 92 A.3d 1226 (Pa. Super. 2014); *see also, In re Estate of Mumma*, 41 A.3d 41, 51-52 (Pa. Super. 2012). To constitute a conflict of interest requiring removal, courts have typically looked at whether there is a dispute in ownership of property between the estate and the fiduciary. *See, e.g., In re Estate of Mumma*, 41 A.3d 41, 51-52 (Pa. Super. 2012). As to the hostility, the court notes that hostility alone is not grounds for removal. The hostility must endanger the estate. *See, In re Estate of Mumma*, 41 A.3d 41, 51-52 (Pa. Super. 2012); *In re Estate of Croessant*, 482 Pa. 188, 195, 393 A.2d 443, 446 (Pa. 1978) *Dimarco Estate*, 435 Pa. 428, 438, 257 A.2d 849, 854 (Pa. 1969). *Estate of Camillo*, 16 Pa. D. & C.5th 129 (C.P. Phila.

2010).

Despite evidence of hostility between John Bower Jr. and his mother, Anna Bower, the court does not believe that there is evidence at this time that such hostility has resulted in the administration of the estate being administered unfairly toward John Bower Jr. There was very little evidence provided about the assets of the estate. No inventory, accounting or proposed distribution has been provided. At this point, the evidence suggests that Anna Bower has been reluctant to pursue lawsuits against any of her children, regardless of the potential amount of the claims. Without an inventory, accounting or proposed distribution, the court concludes that there is insufficient evidence that hostility or favoritism will endanger the fairness of the administration of the estate. The estate appears to be insolvent. Although insufficient evidence exists, the court believes the insolvency is a result of mismanagement, poor record keeping, ignoring corporate structure and large criminal fines paid by the corporate entities rather than the by individual Bowers.

With that said, the court notes its concerns that Anna Bower has not yet fulfilled the primary duties of marshalling assets, providing an inventory, accounting and making a proposed distribution. Up until this point in time, it appears the estate has been focused on dealing with litigation among the parties but has not moved forward on the other duties of administration. The court is prepared to allow Anna Bower, a short period of time in which to show that she can diligently and equitably administer and close the estate.

A major reason supporting this court's decision not to remove Anna Bower at this time is that, as widow of the deceased, Anna Bower has by far the greatest interest and percentage share coming from the estate than any one of her children. Furthermore, only one child has petitioned for her removal with no other child joining in the petition. The timing and content of the petition for removal evidences that it was based primarily, if not exclusively, upon a disagreement with the voting the estate's NBT shares in favor of discontinue the lawsuit. The court agrees with the financial soundness and practicality of that decision. As far as favoritism, the court notes that there have been many potential claims against John Bower Jr., that have not been pursued which equal, if not exceed, the claims against Penelope Bower that were discontinued. Finally, and most practically, the evidence suggests that there are no liquid assets to pay a third-party administrator. As a result, it makes sense from a practical and financial standpoint to allow Anna Bower an opportunity to complete the administration of the estate.[9]

Accordingly, the court enters the following order.

## ORDER

And now, this 23rd day of September, 2014, following a hearing on the petition to remove the administrator of the estate, it is ordered and directed that the petition is denied.

---

9. This decision to deny the petition for removal is without prejudice to any party seeking removal at a later time should circumstances warrant it in the future. However, since the court believes that the decision to discontinue the lawsuit was sound, the decision to deny removal on that basis is with prejudice