J-A28007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: GENEVIEVE BUSH AN INCAPACITATED PERSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: MICHAEL AND JOSEPH BUSH | No. 3207 EDA 2015 |

Appeal from the Order Entered August 7, 2015
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): 1509-1720

BEFORE:  PANELLA, J., SHOGAN, J., and PLATT, J.[*]

MEMORANDUM BY PANELLA, J.          **FILED FEBRUARY 21, 2017**

Appellants, Michael Bush ("Michael") and Joseph Bush ("Joseph"), appeal[1] from the order entered in the Chester County Court of Common Pleas that removed Michael as co-guardian of the person of Genevieve Bush ("Mrs. Bush") and appointed Guardian Services of Pennsylvania as sole guardian. After careful review, we affirm.[2]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] On January 10, 2017, Appellee Mary Bush filed an "Emergency Petition for Writ of Prohibition Mandamus and Habeas Corpus." We summarily deny that motion.

[2] Appellants purport to appeal from the order denying its exceptions entered on September 17, 2015. **See** Notice of Appeal, filed 10/15/16. This is simply incorrect. Appeals generally must be taken from final orders. **See** Pa.R.A.P. 341(b). Orphans' court rule 7.1, in effect at the time of this case, permitted

*(Footnote Continued Next Page)*

The orphans' court has previously set forth a complete factual history of this case, which a panel of this Court adopted in whole at *In re Bush*, Nos. 2726 and 2746 EDA 2011 (Pa. Super., filed June 11, 2012) (unpublished memorandum) (quoting Trial Court Opinion, 6/24/11, at 1-4). Further, another panel of this Court at *In re Bush*, 2014 WL 10917673 (Pa. Super., filed June 24, 2014) (unpublished memorandum), set forth the following brief summary.

> [S]ince the death of her husband, Fabian Bush, on June 25, 2005, the care of Genevieve Bush and her estate have been a matter of contention between her daughter, [Mary Bush ("Mary")] and her three surviving sons, [Appellants] and Justin Bush. [Mary] systematically isolated Mrs. Bush from her sons and their families, prevented [Appellants] from entering the estate and visiting Mrs. Bush, failed to inform them of Mrs. Bush's medical problems, posted signs disparaging them on Mrs. Bush's property, and otherwise kept Mrs. Bush away from [Appellants]. She further persuaded Mrs. Bush to transfer the family home to her for $10.00, and thereafter pay for thousands of dollars of renovations out of the estate.
>
> On June 24, 2011, the court found Mrs. Bush to be an incapacitated person and appointed [Mary] and [Michael] as co-guardians and [Joseph] as guardian of the estate. [Mary] appealed the decision and we affirmed. (*See In re Bush*, Nos. 2726 and 2746 EDA 2011, unpublished memorandum at *3 (Pa. Super. 2012)).

*See id*., at *1.

*(Footnote Continued)* ───────────

the filing of exceptions to any order that would become a final order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342. *See* Pa.O.C.R. 7.1(a). Thus, following the disposition of the exceptions on September 17, 2015, it is the August 7, 2015 order that the exceptions originated from that became the final appealable order. We have corrected the caption accordingly.

Following an increased period of familial discord, on May 23, 2013, the orphans' court forbid Michael and Mary from being present at Mrs. Bush's residence at the same time, unless a constable agreed to be present as well. Additionally, Mary was removed as co-guardian of Mrs. Bush on May 14, 2013 and replaced by co-guardian Elizabeth Srinivasan, Esquire ("Attorney Srinivasan). Mary appealed this decision, and we affirmed.

On February 9, 2015, Appellee filed a petition asking the orphans' court to find that Michael and Joseph had committed perjury and were in contempt of court orders, and to remove them as guardians for Mrs. Bush. Shortly thereafter, Attorney Srinivasan filed a petition to withdraw as co-guardian of the person for Mrs. Bush. On April 16, 2015, Michael and Joseph responded with a request to depose Attorney Srinivasan and Mrs. Bush's primary care physician, Dr. Eliza Thornton. The orphans' court denied this request.

The orphans' court consolidated Mary's and Attorney Srinivasan's petitions into one hearing. And after four days of testimony, the court entered the above-described order, granting Attorney Srinivasan's petition to withdraw as co-guardian and Mary's request to have Michael removed as co-guardian of the person, while denying Mary's requests to have Joseph removed as guardian of the estate, contempt sanctions levied against Appellants, and perjury charges filed against Appellants. Further, the

orphans' court appointed Guardian Services of Pennsylvania as the sole guardian of the person of Mrs. Bush.

Appellants filed exceptions to the order on August 27, 2015. On September 17, 2015, the court denied and dismissed Appellants' exceptions. Appellants timely appealed.

Appellants raise the following issues for our review.

A. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REMOVING MICHAEL BUSH AS CO-GUARDIAN OF THE PERSON.

B. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANTS' MOTION TO CONDUCT DISCOVERY BY WAY OF DEPOSITION OF ELIZABETH SRINIVASAN AND DR. ELIZA THORNTON.

Appellants' Brief, at 10.

First, Appellants claim that the orphans' court abused its discretion in removing Michael as co-guardian of the person for Mrs. Bush. *See* Appellant's Brief, at 16. Specifically, Appellants contend that Michael met the standards as set forth in law for a guardian of the person. *See id*., at 17. Further, Appellants argue that the orphans' court impermissibly removed Michael due to his acrimonious relationship with Mary and Attorney Srinivasan's ineffectiveness. *See id*., at 16-38. No relief is due.

"Our standard of review is well-settled in cases involving [] an orphans' court decision." *In re Estate of Cherwinski*, 856 A.2d 165, 167 (Pa. Super. 2004). As we have explained:

The findings of a judge of the [O]rphan's [C]ourt division, sitting without a jury, must be accorded the same weight and effect as

the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and adequate evidence. However, we are not limited when we review the legal conclusions that the Orphans' Court has derived from those facts.

*Id*. (quoting *In re Estate of Schultheis*, 747 A.2d 918, 922 (Pa. Super. 2000)).

The appointment of a guardian lies within the sound discretion of the orphans' court. *See Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994). In the same vein, "[t]he power of the orphans' court to remove a guardian is an inherent right, which will not be disturbed unless there is a gross abuse of discretion." *In re Estate of Border*, 68 A.3d 946, 959 (Pa. Super. 2013) (citation omitted).

Under Pennsylvania law, a guardian of the person is responsible for all of an incapacitated person's care and custody. *See id*., at 956. The Probate, Estates and Fiduciary Code specifically provides that

[i]t shall be the duty of the guardian of the person to assert the rights and best interests of the incapacitated person. Expressed wishes and preferences of the incapacitated person shall be respected to the greatest possible extent. Where appropriate, the guardian shall assure and participate in the development of a plan of supportive services to meet the person's needs which explains how services will be obtained. The guardian shall also encourage the incapacitated person to participate to the maximum extent of his abilities in all decisions which affect him,

to act on his own behalf whenever he is able to do so and to develop or regain, to the maximum extent possible, his capacity to manage his personal affairs.

20 Pa.C.S.A. § 5521.

Further, the code indicates that "[t]he court shall have exclusive power to remove a personal representative when … for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office." 20 Pa.C.S.A. § 3182(5). Our Supreme Court has indicated that the interests of the estate, including the person, are jeopardized when the incapacitated person's best interests are not being protected. **See In re Estate of Border**, 68 A.3d at 959-960 (interpreting **Scientific Living, Inc. v. Hohensee**, 270 A.2d 216, 224 (Pa. 1970) (applying the standard under 20 Pa.C.S.A. § 3182(5) to a request for removal of a guardian of the person).

Our review of the record indicated prior to removing Michael as guardian, the orphans' court considered four days of testimony from Michael, Mary, Joseph, Attorney Srinivasan, Dottie Miller, Dr. Thornton, Helen Hertzler, Erica Charvis, and Carol Gallo. From this testimony, the orphans' court found as follows.

> Michael's actual day to day care of his mother seems to be at least adequate. He is certainly fully committed to being her caregiver. But there is more to addressing Mrs. Bush's welfare than the functions of shelter, food and basic medical care. Michael has proven himself incapable of consistently dealing in a productive fashion with his sister or with the co-guardian. He seems to have no ability to work collaboratively for his mother unless he is in full control. He has inundated the co-guardian

with angry e-mails, even more than [Mary] has. He knows his sister steals or moves supplies from the house to make his job harder (which I find credible), but his solution is to put chains and locks on the furniture and accessories. How can he possibly think this benefits Mrs. Bush? Rather than give Mrs. Bush a lovely day out at the hairdresser, which she can well afford, he cut her hair himself. Rather than treat her to a pedicure or take her to the podiatrist, he cut her toe nails [sic] himself. He put Relative Care workers on the spot by making them sign off on emails and his care plan. While he has met her most basic needs, he has been passive about her medical care, physical therapy and encouraging her social life.

*****

Michael, Joseph and Mary agree on one thing: they want their mother to live in her own home as long as she possibly can. Dr. Thornton testified that, wherever possible, it is desirable to let an older person age in place. She opined that she did not object to Mrs. Bush being out of the home in light of the stressful situation caused by the siblings. [Michael, Joseph,] and Mary are oblivious to the fact that their own actions have rendered aging in place an unrealistic and unhealthy option for Mrs. Bush. Based on their past behavior, the likelihood that they could ever agree as to how that goal could peacefully be accomplished in the future is null.

Were Mrs. Bush able to be safety transferred back to living in her home, that home itself would remain a flashpoint for her children. Were Mrs. Bush to return home, the wars over her day to day care would immediately resume so long as Michael and Mary had any responsibility for it. … If there is no counterbalance to Michael's efforts to limit Mary's access, we will see the reverse of the isolation and estrangement that existed prior to the guardianship, at Mary's hands.

Thus, I can see no scenario in which Michael alone, Michael and a co-guardian, Mary alone, or Mary and a co-guardian could provide for Mrs. Bush's best interests. Regardless of where Mrs. Bush ultimately resides, she deserves to have the decisions made for her to be thoughtful, empathetic, educated and absent any agenda. In this case, with these siblings, this can only be accomplished by the appointment of an independent, non-family guardian.

Trial Court Opinion, 8/7/15, at 9-10.

The record supports the trial court's findings and conclusion that Michael's appointment, as either sole or co-guardian of the person, would not fulfill Mrs. Bush's best interests. **See** 20 Pa.C.S.A. § 5521 (duty of guardian of the person to pursue incapacitated person's best interest). Michael's actions have ignored Mrs. Bush's best interests and, as we found with Mary's actions in a previous appeal, isolated Mrs. Bush. Thus, we find no abuse of discretion in the orphans' court removal of Michael as co-guardian of the person, and consequently, Appellants' first issue on appeal fails. **See In re Estate of Border**, 68 A.3d at 959-960 (removal of guardian of the person for failure to promote best interests is appropriate).

Next, Appellants contend that the trial court erred by denying their request to take the depositions of Attorney Srinivasan and Dr. Thornton. **See** Appellant's Brief, at 38. Appellants contend that the orphans' court's denial of Appellants' discovery request impaired their case, as they were not able to fully explore the factual basis behind Attorney Srinivasan and Dr. Thornton's testimony at the hearing. **See id**., at 38-39.

Pennsylvania Orphans' Court Rule 3.6 pertains to discovery in orphans' court matters:

> The local Orphans' Court, by general rule or special order, may prescribe the practice relating to depositions, discovery, production of documents and perpetuation of testimony. To the extent not provided for by such general rule or special order, the

practice relating to such matters shall conform to the practice in the Trial or Civil Division of the local Court of Common Pleas.

Pa.O.C.R. 3.6. Chester County Orphans' Court Rule 3.6 prescribes the practice by requiring orphans' court participants get court approval prior to taking depositions or compelling the production of documents.

Here, the record reflects that during the course of the four-day trial, Appellants examined both Dr. Thornton and Attorney Srinivasan on the witness stand. There is no indication that the trial court limited the amount of questions, or the type of questions they were permitted to ask these witnesses. Further, in their brief, Appellants fail to indicate in their brief exactly what information pertaining to the factual basis of Dr. Thornton's and Attorney Srinivasan's testimony they were not able to elicit through testimony, that they would have been able to elicit through a deposition.

Thus, we do not have any basis for concluding, as Appellants' request, that the orphans' court's denial of their motion for discovery harmed their case. We agree with the orphans' court's reasoning that depositions were unnecessary and that taking depositions would have only prolonged this protracted matter. Because we find that the court was acting within its discretion to "prescribe the practice relating to depositions, discovery, production of documents and perpetuation of testimony," we do not find an abuse of discretion. **In re Hyman**, 811 A.2d 605, 608 (Pa. Super. 2002) (citation omitted). Thus, Appellants' final issue on appeal merits no relief.

Order affirmed. Motion denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/21/2017